IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAVID PRIEST,<br><br>　　　　　　　Petitioner,<br><br>　　vs.<br><br>GARY SWARTHOUT,[1] Warden (A),<br>California State Prison, Solano,<br><br>　　　　　　　Respondent. | No. 2:08-cv-00292-TMB<br><br>MEMORANDUM DECISION |

Petitioner David Priest, a state prisoner proceeding *pro se*, has filed a petition for habeas

corpus relief under 28 U.S.C. § 2254.  Priest is in the custody of the California Department of

Corrections and Rehabilitation, incarcerated at the California State Prison, Solano.  Respondent

has answered and Priest has replied.

I.  BACKGROUND/PRIOR PROCEEDINGS

After entering a plea of guilty in July 1987, Priest was convicted in the San Joaquin

Superior Court of one count of Murder in the Second Degree (Cal. Penal Code, § 187) and the

use of a firearm (Cal. Penal Code, §§ 969(d), 12022.5).  The trial court sentenced Priest to an

indeterminate prison term of 15 years plus two years on the firearms conviction, to be served

consecutively, for an aggregate term of 17 years to life.  Priest does not challenge his conviction

and sentence in this proceeding.

---

[1] Gary Swarthout, Warden (A), California State Prison, Solano, is substituted for D. K. Sisto, Warden, California State Prison, Solano.  Fed. R. Civ. P. 25(d).

In January 2007 Priest appeared at a parole suitability hearing before the California Board

of Parole Hearings.  The Board denied Priest parole for a period of one year.  Priest timely filed a

petition for habeas corpus relief in the San Joaquin County Superior Court, which denied his

petition in an unpublished, reasoned decision.  The California Court of Appeal, Third Appellate

District, summarily denied his petition for habeas corpus relief without opinion or citation to

authority.  The California Supreme Court summarily denied review without opinion or citation to

authority on January 16, 2008.  Priest timely filed his petition for relief in this court on

February 5, 2008.

The facts of the case, as recited by the Board are:

On March 24, 1986, at approximately 5:09, a.m., the Stockton Police
Department responded to the parking lot at the Dopaco, D-O-P-A-C-O, company,
800A Adam, West Church Street in Stockton.  Paramedics were transporting the
victim, John William Howe, H-O-W-E, to the hospital.  The victim had no pulse
and was pronounced dead at 5:28 a.m. at the San Joaquin General Hospital.  In the
victim's wallet, officers found two small baggies of white powder, two additional
baggies of white powder were found in a pack of cigarettes.  The victim had
$1,080 in cash in his pants pocket.  The powder tested positive for
methamphetamines.  Officers received information the victim sometimes sold
methamphetamines at the work site.  The autopsy noted gunshot wounds to the
right pectoral, left back, and right side of the body.  Cause of death was attributed
to shock and hemorrhage.  Witness Ernest Machado, M-A-C-H-A-D-O had
arrived at the business and saw the victim lying motionless and summoned
authorities.  The victim worked at this business and had been seen by several co-
workers at 4:20 a.m.  Investigators found bullet fragments in a tire and on the
ground near the Ford Thunderbird vehicle -- Pardon me.  Near a Ford Thunderbird
vehicle in the parking lot 30-30 caliber rifle shell casings were found.  Officers
learned from an employee that [Priest] had been at the plant approximately 3:00
a.m. and had met the victim outside for a few minutes before the victim returned
to his work site. Victor Coleman, C-O-L-E-M-A-N told officers that [Priest] had
been at his Lodi residence at approximately 12:00 p.m. on March 24, 1986.  He
and [Priest] worked at Dopaco Company before [Priest] had been terminated.
[Priest] was chopping up and snorting, quote, "crank," end quote, at the house
until approximately 1:20 a.m. [Priest] told Coleman that he had something to take
care of that night and that he was going to take care of a lot of other people's

problems too.  Coleman was told that if he heard anything bad had happened, he should not say anything about what [Priest] had told him or he, parens, ([Priest]), end of parens, would shoot him too.  Coleman thought [Priest] was just high on drugs and initially discarded the statement. [Priest] told Coleman that he wanted to go to Stockton to obtain more methamphetamines from the victim.  Coleman had [Priest] drop him off at his house. Apparently, the victim had an arrangement with [Priest] wherein Howe would front [Priest] a quantity of, quote, "crank," end quote, and [Priest] would pay Howe back had he sold it.  Coleman stated that he saw a rifle on the floorboard of [Priest's] vehicle and that he observed a bullet fall from [Priest's] pocket. Officers also learned that Susan Priest, the victim's (*sic*) estranged wife, had been seen at the victim's residence in the past and that [Priest] had displayed jealousy regarding that situation.  Susan Priest advised officers that her estranged husband had obtained narcotics from Howe and that he was also selling. She said that his personality and reliability had gone, quote, "downhill," end quote, recently.  She denied any relationship with Howe.  On March 27, 1986, a search warrant was served at [Priest's] residence in Lodi.  This was the home of [Priest's] brother, Steven Priest, where [Priest] had been staying for the last two weeks.  A 30-30 caliber rifle was found in the rafters of the garage.  [Priest's] brother said that the gun had been moved from a cabinet inside the house.  Laboratory analysis reflected the expended 30-30 cartridge casing found at the scene were fired from this rifle.  [Priest] was arrested on March 27, 1986.  He was advised of his rights but had offered that he had taken a gun to the Dopaco plant at about 3:00 a.m. to talk to Stacey, S-T-A-C-Y, Dodson, D-O-D-S-O-N for about five minutes to find out where Dodson lived.  [Priest] stated that he talked to Victim Howe for one to two minutes as well before departing.  [Priest] denied that he had any weapon in his vehicle, denied shooting the victim.  He disclaimed any knowledge of the rifle found in his brother's garage.  At the conclusion of the interview, [Priest] was booked for the murder of Mr. Howe.

After the pleadings were complete and the issues joined, this Court stayed further proceedings in this action pending decision by the en banc panel of the United States Court of Appeals for the Ninth Circuit in *Hayward*.[2]  The Ninth Circuit has issued its en banc opinion in *Hayward*;[3] therefore, the Court terminates the stay and decides the case.

---

[2] *Hayward v. Marshall*, 512 F.3d 536, *rehrg en banc granted*, 527 F.3d 797 (9th Cir. 2008), Case No. 06-55392.

[3] *Hayward v. Marshall*, 603 F.3d 546 (9th Cir. 2010) (en banc).

## II.  GROUNDS PRESENTED/DEFENSES

Although he has enumerated five grounds, Priest presents but three grounds, three of

which (second, third, and fourth) attack the quantum and adequacy of the evidence and are

addressed as one as Ground 2 in this Memorandum Decision:  (1)  that he has a liberty interest in

parole that is subject to the Due Process Clause of the U.S. Constitution; (2) that the finding of

the Board of unsuitability for parole is not based upon sufficient reliable evidence; and (3) the

Board is biased.  Respondent asserts no affirmative defense.[4]

## III.  STANDARD OF REVIEW

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C.

§ 2254(d), this court cannot grant relief unless the decision of the state court was "contrary to, or

involved an unreasonable application of, clearly established Federal law, as determined by the

Supreme Court of the United States" at the time the state court renders its decision or "was based

on an unreasonable determination of the facts in light of the evidence presented in the State court

proceeding."[5]  The Supreme Court has explained that "clearly established Federal law" in §

2254(d)(1) "refers to the holdings, as opposed to the dicta, of [the Supreme Court] as of the time

of the relevant state-court decision."[6]  The holding must also be intended to be binding upon the

states; that is, the decision must be based upon constitutional grounds, not on the supervisory

power of the Supreme Court over federal courts.[7]  Thus, where holdings of the Supreme Court

---

[4] *See* Rules—Section 2254 Cases, Rule 5(b).

[5] 28 U.S.C. § 2254(d); *see Williams v. Taylor*, 529 U.S. 362, 404-06 (2000); *see also Lockyer v. Andrade,* 538 U.S. 63, 70-75 (2003) (explaining this standard).

[6] *Williams*, 529 U.S. at 412.

[7] *Early v. Packer*, 537 U.S. 3, 10 (2002).

regarding the issue presented on habeas review are lacking, "it cannot be said that the state court 'unreasonabl[y] appli[ed] clearly established Federal law.'"[8] When a claim falls under the "unreasonable application" prong, a state court's application of Supreme Court precedent must be objectively unreasonable, not just incorrect or erroneous.[9] The Supreme Court has made clear that the objectively unreasonable standard is a substantially higher threshold than simply believing that the state court determination was incorrect.[10] "[A]bsent a specific constitutional violation, federal habeas corpus review of trial error is limited to whether the error 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'"[11] In a federal habeas proceeding, the standard under which this court must assess the prejudicial impact of constitutional error in a state-court criminal trial is whether the error had a substantial and injurious effect or influence in determining the outcome.[12] Because state court judgments carry a presumption of finality and legality, the petitioner has the burden of showing by a preponderance of the evidence that he or she merits habeas relief.[13]

---

[8] *Carey v. Musladin*, 549 U.S. 70, 77 (2006) (alterations by the Court); *see Wright v. Van Patten*, 552 U.S. 120, 127 (2008) (per curiam); *Kessee v. Mendoza-Powers*, 574 F.3d 675, 678-79 (9th Cir. 2009); *Moses v. Payne*, 555 F.3d 742, 753-54 (9th Cir. 2009) (explaining the difference between principles enunciated by the Supreme Court that are directly applicable to the case and principles that must be modified in order to be applied to the case; the former are clearly established precedent for purposes of § 2254(d)(1), the latter are not).

[9] *Wiggins v. Smith*, 539 U.S. 510, 520-21 (2003) (internal quotation marks and citations omitted).

[10] *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007).

[11] *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)).

[12] *Fry v. Pliler*, 551 U.S. 112, 121 (2007) (adopting the standard set forth in *Brecht v. Abrahamson*, 507 U.S. 619, 637-38 (1993)).

[13] *Silva v. Woodford*, 279 F.3d 825, 835 (9th Cir. 2002); *see Wood v. Bartholomew*, 516 U.S. 1, 8 (1995) (per curiam) (stating that a federal court cannot grant "habeas relief on the basis of little more than speculation with slight support").

In applying this standard, this court reviews the last reasoned decision by the state court.[14] Under AEDPA, the state court's findings of fact are presumed to be correct unless the petitioner rebuts this presumption by clear and convincing evidence.[15] This presumption applies to state trial courts and appellate courts alike.[16]

## IV. DISCUSSION

Respondent contends that Priest does not have a sufficient liberty interest in parole to support federal habeas corpus relief[17] and, in any event, his due process rights were satisfied.[18] These two contentions are foreclosed by the en banc decision in *Hayward*. *Hayward* made clear that California law provides the predicate for the "some evidence" rule applicable in a federal habeas proceeding,[19] thus disposing of Respondent's contentions.

Ground 1: Federal Liberty Interest. *Hayward* made clear that there is no federal "some evidence" rule, but there is a corresponding California rule cognizable in a federal habeas proceeding,[20] thereby rendering Priest's first ground essentially moot. Furthermore, in his first ground, Priest does not specify how his alleged due process violation rights were violated, only that they exist. Thus, Priest's first ground merely sets the stage for asserting his remaining grounds but, standing alone, does not provide any basis for relief and is, therefore, superfluous.

---

[14] *Ylst v. Nunnemaker*, 501 U.S. 797, 804 (1991); *Robinson v. Ignacio,* 360 F.3d 1044, 1055 (9th Cir. 2004).

[15] 28 U.S.C. § 2254(e)(1); *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).

[16] *Stevenson v. Lewis*, 384 F.3d 1069, 1072 (9th Cir. 2004).

[17] *See Greenholtz v. Inmates of Neb. Penal and Corr. Complex*, 442 U.S. 1, 7 (1979).

[18] *See id.* at 15.

[19] *Hayward*, 603 F.3d at 561–62.

[20] *Id.* at 561.

Ground 2:  Sufficiency of the Evidence.

In support of this ground, Priest advances multiple arguments:  (1) that there is no evidence to support a finding of unsuitability for parole; (2) a lack of nexus between the reasons given and the decision to deny parole, specifically, the nature of the underlying commitment offense and prior record; and (3) the factors tending to establish suitability outweigh any factors tending to establish unsuitability.  In rejecting Priest's arguments, the San Joaquin County Superior Court held:

> Petitioner pled guilty to second degree murder, with an enhancement for personal use of a weapon, on June 11, 1987.  He was sentenced to 17 years to life in prison. Petitioner claims that he was wrongly denied a parole date at his last suitability hearing.
> The transcript of the hearing reveals that the board determined that the commitment offense was carried out in an especially cruel and callous manner in that the victim was "shot and killed with a 30-30 rifle," that petitioner "armed [himself] with a weapon [he] knew how to use.  [He] knew the weapon was loaded, and [he] went to [the victim's] work place while angry to confront [the victim]: It was also noted that the victim suffered multiple gunshot wounds, and that there was no indication that the victim was armed or otherwise posed an immediate threat to petitioner.  It was also noted that both the District Attorney and the victIm's wife opposed parole at this time, and that there was not a current, psychological report supporting parole.  In addition, the board noted that petitioner's prior criminality evidenced an escalating pattern of criminal conduct. These are valid reasons for the denial.
> Petitioner has therefore failed to set forth a prima facie case for relief. *(In* re *Dannenberg* (2005) 34 Cal.4th 1061, 104 P.3d 783, 23 Cal.Rptr.3d 417; *In re Bower* (1985) 38 Cal.3d 865; 215 Cal.Rptr, 267, 700 P.2d 1269; *People v. Jackson* (1980) 28 Cal. 3d 264; 168 Cal.Rptr. 603, 618 P.2d 149; *In re Muszalski* (1975) 52 Cal. 3d 500, 125 Cal. Rptr. 286.)[21]

In this case, this court "need only decide whether the California judicial decision approving the [Board's] decision rejecting parole was an 'unreasonable application' of the

---

[21] Docket 6-3, p. 27.

California 'some evidence' requirement, or 'was based on an unreasonable determination of the

facts in light of the evidence.'"[22]   Consequently, this court must canvas and apply California law

to the facts in the record.  Under California law "some evidence" of future dangerousness is a

*sine qua non* for denial of parole.[23]   As the Ninth Circuit noted:

> As a matter of California law, "the paramount consideration for both the
> Board [of Prison Terms] and the Governor under the governing statutes is whether
> the inmate currently poses a threat to public safety." (Footnote omitted)  There
> must be "some evidence" of such a threat, and an aggravated offense "does not, in
> every case, provide evidence that the inmate is a current threat to public safety."
> (Footnote omitted).  The prisoner's aggravated offense does not establish current
> dangerousness "unless the record also establishes that something in the prisoner's
> pre or post-incarceration history, or his or her current demeanor and mental state"
> supports the inference of dangerousness.  (Footnote omitted.)  Thus, in California,
> the offense of conviction may be considered, but the consideration must address
> the determining factor, "a current threat to public safety."  (Footnote omitted.)[24]

Under California law, a parole release date must be set "unless [the Board] determines

that the gravity of the current convicted offense or offenses, or the timing and gravity of current

or past convicted offense or offenses, is such that consideration of the *public safety* requires a

more lengthy period of incarceration for this individual, and that a parole date, therefore, cannot

be fixed . . . ."[25]  "The nature of the prisoner's offense, alone, can constitute a sufficient basis for

denying parole."[26]  The Board  must, however, "point to factors beyond the minimum elements of

the crime for which the inmate was committed" that demonstrate the inmate will, at the time of

---

[22] *Hayward*, 603 F.3d at 563 (footnotes citing 28 U.S.C. § 2254(d) omitted).

[23] *In re Lawrence*, 190 P.3d 535, 549 (Cal. 2008); *In re Shaputis*, 190 P.3d 573, 582 (Cal. 2008).

[24] *Hayward*, 603 F.3d at 562 (omitted footnotes are pinpoint citations to *Lawrence*) (internal alteration in the original).

[25] Cal. Penal Code § 3041(b) (emphasis added); *Lawrence*, 190 P.3d at 546; *see Rosenkrantz*, 59 P.3d at 202-03.

[26] *In re Rosenkrantz*, 59 P.3d 174, 222 (Cal. 2002).

the suitability hearing, present a danger to society if released.[27]   The Board  "may credit evidence

suggesting the inmate committed a greater degree of the offense than his or her conviction

evidences."[28]   "[T]he statutory and regulatory mandate to normally grant parole to life prisoners

who have committed murder means that, particularly after these prisoners have served their

suggested base terms, the underlying circumstances of the commitment offense alone rarely will

provide a valid basis for denying parole when there is strong evidence of rehabilitation and no

other evidence of current dangerousness."[29]   Where, however, the record also contains evidence

of other factors relevant to showing unsuitability for parole, the aggravating circumstances of the

crime reliably may continue to predict current dangerousness even after many years of

incarceration.[30]

     The California Supreme Court has provided substantial guidance on the factors to be

considered in applying these general principles.

> Title 15, section 2402 of the California Code of Regulations sets forth the factors
> to be considered by the Board in carrying out the mandate of the statutes.[FN13]   This
> regulation is designed to guide the Board's assessment of whether the inmate
> poses "an unreasonable risk of danger to society if released from prison," and thus
> whether he or she is suitable for parole. (Regs., § 2402, subd. (a).)[FN14]   The
> regulation also lists several circumstances relating to unsuitability for parole[FN15]—
> such as the heinous, atrocious, or cruel nature of the crime, or an unstable social
> background; and several circumstances relating to *suitability* for parole—such as
> an inmate's rehabilitative efforts, demonstration of remorse, and the mitigating
> circumstances of the crime.[FN16]   (Regs., § 2402, subds. (c), (d).)   Finally, the
> regulation explains that the foregoing circumstances "are set forth as general
> guidelines; the importance attached to any circumstance or combination of

---

[27] *In re Dannenberg,* 104 P.3d 783, 786-87, 802-803 (Cal. 2005); *see Rosenkrantz.*

[28] *Dannenberg*, 104 P.3d at 803 n.16 (citing *Rosenkrantz*, 59 P.3d at 219).

[29] *Lawrence*, 190 P.3d at 553.

[30] *See Shaputis*, 190 P.3d at 584-85.

circumstances in a particular case is left to the judgment of the panel." (Regs., § 2402, subds. (c), (d).)  [. . . .]

FN13. Petitioner's parole suitability is governed by Title 15, section 2402, which we addressed in *Rosenkrantz, supra,* 29 Cal.4th 616, 128 Cal.Rptr.2d 104, 59 P.3d 174—a discussion excerpted in substantial part below.  In the companion case of *Lawrence, supra,* 44 Cal.4th 1181, 82 Cal.Rptr.3d 169, 190 P.3d 535, the inmate's parole suitability is governed by Title 15, section 2281, which provides parole consideration criteria and guidelines for murders committed prior to November 8, 1978.  The two sections are identical.

FN14. These factors include "the circumstances of the prisoner's social history; past and present mental state; past criminal history, including involvement in other criminal misconduct which is reliably documented; the base and other commitment offenses, including behavior before, during and after the crime; past and present attitude toward the crime; any conditions of treatment or control, including the use of special conditions under which the prisoner may safely be released to the community; and any other information which bears on the prisoner's suitability for release. Circumstances which taken alone may not firmly establish unsuitability for parole may contribute to a pattern which results in a finding of unsuitability." (Regs., § 2402, subd. (b).)

FN15. Unsuitability factors are: (1) a commitment offense carried out in an "especially heinous, atrocious or cruel manner"; (2) a "[p]revious [r]ecord of [v]iolence"; (3) "a history of unstable or tumultuous relationships with others"; (4) "[s]adistic [s]exual [o]ffenses"; (5) "a lengthy history of severe mental problems related to the offense"; and (6) "[t]he prisoner has engaged in serious misconduct in prison or jail." (Regs., § 2402, subd. (c)(1)-(6).)  This subdivision further provides that "the importance attached to any circumstance or combination of circumstances in a particular case is left to the judgment of the panel." (Regs., § 2402, subd. (c).)

Factors supporting a finding that the inmate committed the offense in an especially heinous, atrocious, or cruel manner include the following: (A) multiple victims were attacked, injured, or killed in the same or separate incidents; (B) the offense was carried out in a dispassionate and calculated manner, such as an execution-style murder; (C) the victim was abused, defiled, or mutilated during or after the offense; (D) the offense was carried out in a manner that demonstrates an exceptionally callous disregard for human suffering; and (E) the motive for the crime is inexplicable or very trivial in relation to the offense.  (Regs., § 2402, subd. (c)(1).)

FN16. Suitability factors are: (1) the absence of a juvenile record; (2) "reasonably stable relationships with others"; (3) signs of remorse; (4) a

crime committed "as the result of significant stress in [the prisoner's] life";
(5) battered woman syndrome; (6) the lack of "any significant history of
violent crime"; (7) "[t]he prisoner's present age reduces the probability of
recidivism"; (8) "[t]he prisoner has made realistic plans for release or has
developed marketable skills that can be put to use upon release"; and (9)
the inmate's "[i]nstitutional activities indicate an enhanced ability to
function within the law upon release." (Regs., § 2402, subd. (d)(1)-(9).)

"[T]he governing statute provides that the Board *must* grant parole *unless*
it determines that *public safety* requires a lengthier period of incarceration for the
individual because of the gravity of the offense underlying the conviction.
(Pen.Code, § 3041, subd. (b).) And as set forth in the governing regulations, the
Board must set a parole date for a prisoner unless it finds, in the exercise of its
judgment after considering the circumstances enumerated in section 2402 of the
regulations, that the prisoner is unsuitable for parole. Accordingly, parole
applicants in this state have an expectation that they will be granted parole unless
the Board finds, in the exercise of its discretion, that they are unsuitable for parole
in light of the circumstances specified by statute and by regulation." (*Rosenkrantz,
supra,* 29 Cal.4th at p. 654, 128 Cal.Rptr.2d 104, 59 P.3d 174, Italics added.)[31]

"[T]he precise manner in which the specified factors relevant to parole suitability
are considered and balanced lies within the discretion of the [Board]. . . . It is
irrelevant that a court might determine that evidence in the record tending to
establish suitability for parole far outweighs evidence demonstrating unsuitability
for parole. As long as the [Board's] decision reflects *due consideration of the
specified factors* as applied to the individual prisoner in accordance with
applicable legal standards, the court's review is limited to ascertaining whether
there is some evidence in the record that supports the [Board's] decision."[32]

This court does not re-weigh the evidence or substitute it's discretion for that of the

Board. Under California law, judicial review of a decision denying parole is "extremely

deferential."[33] It is through this doubly deferential lens that this court reviews the decision of the

San Joaquin Superior Court. Based upon the record before it, applying *Rosenkrantz,*

*Dannenberg, Lawrence* and *Shaputis*, this court cannot say that the decision of the San Joaquin

---

[31] *Shaputis*, 190 P.3d at 582-83 (emphasis in the original).

[32] *Shaputis*, 190 P.3d at 585 (emphasis in the original) (quoting *Rosenkrantz*, 59 P.3d at 218).

[33] *Rosenkrantz*, 59 P.3d at 210.

Superior Court affirming denial of parole was contrary to, or involved an unreasonable

application of California law or was based on an unreasonable determination of the facts in light

of the evidence.  Priest is not entitled to relief under his second ground.

Ground 3:  Bias.

Priest argues that the Board was predisposed to deny him parole.  Specifically, Priest

refers to 65 questions concerning the underlying commitment offense that he contends were more

along the lines of a trial than a parole suitability hearing.  Priest argues that no questions were

asked that provided him a fair opportunity to demonstrate that he had gained insight into the

causative factors that led to the commitment offense, express sincere remorse, or speak to how he

had benefitted from the self-help programs he had participated in.  Although Priest raised this

ground at each level of review in the California courts, no court reached the issue.  When there is

no reasoned state court decision denying an issue presented to the state court and raised in a

federal habeas petition, this court must assume that the state court decided all the issues

presented to it and perform an independent review of the record to ascertain whether the state

court decision was objectively unreasonable.[34]  The scope of this review is for clear error of the

state court ruling on the petition:

> [A]lthough we cannot undertake our review by analyzing the basis for the state
> court's decision, we can view it through the "objectively reasonable" lens ground
> by *Williams*. . . .  Federal habeas review is not *de novo* when the state court does
> not supply reasoning for its decision, but an independent review of the record is
> required to determine whether the state court clearly erred in its application of

---

[34] *Reynoso v. Giurbino*, 462 F.3d 1099, 1109 (9th Cir. 2006); *Pham v. Terhune*, 400 F.3d 740,
742 (9th Cir. 2005) (per curiam).

controlling federal law.  Only by that examination may we determine whether the state court's decision was objectively reasonable.[35]

"[A]lthough we independently review the record, we still defer to the state court's ultimate decision."[36]

First, the court notes that the line of questions referred to by Priest go to the underlying commitment offense, which is certainly relevant to his suitability for parole.  Second, that he was denied an opportunity to address the panel on the subjects of causative factors, remorse, or how he had benefitted from self-help programs is belied by the record.  Deputy Commissioner Herron summarized a psychological evaluation that addressed Priest's insight and positive attitude, demonstrated responsiveness to treatment and self-help groups, ability to deal with stress and potential for violence should Priest be released.[37]  Priest was then asked by both the Deputy Commissioner and his own attorney if he had anything to add, to which Priest responded "No."[38]

It is axiomatic that a "fair trial in a fair tribunal is a basic requirement of due process," *i.e.*, an absence of actual bias.[39]  This principle applies equally to adjudicative administrative agencies as well.[40]  To make out a claim of unconstitutional bias, Priest must "overcome a presumption of honesty and integrity" on the part of the decision-maker.[41]  In this case, the

---

[35] *Delgado v. Lewis* (*Delgado II*), 223 F.3d 976, 982 (9th Cir. 2000) (internal citation omitted); *see also Lewis v. Mayle*, 391 F.3d 989, 996 (9th Cir. 2004).

[36] *Pirtle v. Morgan*, 313 F.3d 1160, 1167 (9th Cir. 2002).

[37] Docket 6-2, p. 46.

[38] Docket 6-2, p. 47.

[39] *In re Murchison*, 349 U.S. 133, 136 (1955); *Bracey v. Gramley*, 520 U.S. 899, 904-05 (1997).

[40] *Gibson v. Berryhill*, 411 U.S. 564, 579 (1973).

[41] *Withrow v. Larkin*, 421 U.S. 35, 46 (1975).

questions posed by the Panel were relevant to the determination of the ultimate issue and the record clearly demonstrates that Priest was not denied the opportunity to present any relevant argument or fact to the panel.  Thus, Priest has manifestly failed to shoulder his burden.  Based upon its review of the record before it, this court cannot say that the assumed decisions of the California courts denying Priest's application for a writ of habeas corpus were "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or were "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."[42]  Nor can this Court find that the state court unreasonably applied the correct legal principle to the facts of the Priest's case within the scope of *Lockyer–Williams–Schriro*; *i.e.*, the state court decision was more than incorrect or erroneous, its application of clearly established law was objectively unreasonable.  Priest is not entitled to relief under his third ground.

## V.  CONCLUSION AND ORDER

Priest is not entitled to relief on any ground raised in his petition.  Accordingly,

**IT IS THEREFORE ORDERED THAT** the Petition under 28 U.S.C. § 2254 for Writ of Habeas Corpus is **DENIED**.

---

[42] 28 U.S.C. § 2254(d).

**IT IS FURTHER ORDERED THAT** this court declines to issue a Certificate of

Appealability.[43]  Any further request for a Certificate of Appealability must be addressed to the

Court of Appeals.[44]

The Clerk of the Court is to enter final judgment accordingly.

Dated:  June 17, 2010.

s/ Timothy M. Burgess
TIMOTHY M. BURGESS
United States District Judge

---

[43] 28 U.S.C. § 2253(c); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (a COA should be granted where the applicant has made "a substantial showing of the denial of a constitutional right," *i.e.,* when "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further") (internal quotation marks omitted).

[44] *See* Fed. R. App. P. 22(b); Ninth Circuit R. 22-1.